UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALIYA A.,

           Plaintiff,

      v.                                       **DECISION AND ORDER**
                                                      20-CV-1004S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Aliya A.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since January 30, 2015, due to chronic deep vein thrombosis of the right leg, obesity, and chronic obstructive pulmonary disease. Plaintiff maintains that she is entitled to benefits because her impairments render her unable to work.

      2.      Plaintiff filed applications for disability benefits and supplemental security income on January 12, 2017. After denial at the agency level, Plaintiff proceeded to a hearing, which took place via videoconference before ALJ Mary Sparks on October 31, 2018. At the time of the hearing, Plaintiff was 34 years old, with at least a high school education, and had past relevant work as a bartender and teacher's aide. The ALJ considered the case *de novo* and, on March 21, 2019, issued a written decision denying

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

1

Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on June 2, 2020.

3. Plaintiff filed the current action on August 3, 2020, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on August 26, 2021. (Docket Nos. 9, 12, 14, 15.) The case was thereafter assigned here on October 6, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 16.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. §§ 405 (g), 1383 (c)(3).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see

---

[2] The ALJ's March 21, 2019 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

      6.     As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. §§ 405 (g), 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial

evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to

5

> perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.     The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. §§ 423 (d)(2)(A), 1383 (c)(1)(A); 20 C.F.R. §§ 404.1520 (f), 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12.     In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since January 30, 2015 (alleged onset date) (R. at 17); (2) Plaintiff's chronic deep vein thrombosis of the right leg and obesity were severe impairments within the meaning of the Act (R. at 18); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 18); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567 (b) and 416.967 (b), except after sitting for two hours, she would need to stand or walk for approximately five minutes (R.

at 18-25); (5) Plaintiff was able to perform her past relevant work as a bartender and teacher's aide (R. at 25-26); and, alternatively (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 26-27).  Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from January 30, 2015, through March 21, 2019.  (R. at 16, 27.)

13. Plaintiff challenges the ALJ's decision on two grounds.  First, she argues that the ALJ failed to properly develop the administrative record as it relates to her treating physician's opinion.  Second, she alleges that the ALJ failed to properly consider her testimony concerning the need to elevate her legs.  In response, the Commissioner argues that the ALJ's decision is free from legal error and supported by substantial evidence and should therefore be affirmed.  This Court agrees with the Commissioner.

14. Plaintiff first argues that the ALJ failed to develop the administrative record by not seeking clarification of her treating physician's opinion.  Plaintiff's treating hematologist, Haider Khadim, M.D., noted in his treatment records from February 14, 2018, that Plaintiff scored a 1 on the ECOG Performance Scale.[3]  (R. at 290.)  This resulted in a standardized assessment that Plaintiff was "[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature e.g., light house work, office work."  Id.

15. The ALJ afforded Dr. Khadim's overall opinion "significant weight."  (R. at 25.)  While acknowledging that the opinion was "vague, and not a function by function

---

[3] The Eastern Cooperative Oncology Group (ECOG) created its performance scale in 1982 to measure cancer patients' functional abilities.  See https://ecog-acrin.org/resources/ecog-performance-status/ (last visited February 22, 2022).  To that end, the ECOG Performance Scale assesses a patient's ability to self-care, to engage in daily activities, and to participate in physical activities, such as walking and working. Id.  The scale ranges from 0 (fully active/no restrictions) to 5 (death), with each level containing its own performance status description.  See id.  Though Dr. Khadim, a hematologist/oncologist, used this scale to assess Plaintiff, there is no evidence that she had cancer.

[sic] analysis of [Plaintiff's] exertional capacity," the ALJ nonetheless concluded that Dr. Khadim did not consider Plaintiff's condition to be disabling, an assessment the ALJ found to be consistent with the record as a whole, including mostly normal physical examinations and an ability to engage in significant activities of daily living (e.g., caring for a toddler, preparing meals, cleaning).  Id.

16.     Plaintiff argues that the ALJ erred by not developing the record further once she found that Dr. Khadim's opinion was vague.  In Plaintiff's view, the ALJ should have re-contacted Dr. Khadim for a more detailed opinion concerning the extent of Plaintiff's ability to perform any light or sedentary work.  Having carefully examined the record, this Court detects no error.

17.     "Before determining whether the Commissioner's conclusions are supported by substantial evidence, a court must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act."  Russ v. Comm'r of Soc. Sec., 20-CV-6389 (RWL), 2022 WL 278657, at *7 (S.D.N.Y. Jan. 31, 2022) (alterations in original; quotation marks omitted) (quoting Moran, 569 F.3d at 112).  Whether an ALJ fully satisfied his or her duty to develop the administrative record is therefore a threshold issue.  See Russ, 2022 WL 278657, at *7; Campbell v. Comm'r of Soc. Sec., No. 19-CV-4516, 2020 WL 4581776, at *14 (S.D.N.Y. Aug. 10, 2020) ("Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405 (g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record.") (internal quotation marks and citations omitted)).

18.     An "ALJ, unlike a judge in a trial, must herself affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Moran, 569 F.3d a 112.  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, see, e.g., 20 C.F.R. § 404.1512(d)-(f), and exists even when, as here, the claimant is represented by counsel, see Pratts, 94 F.3d at 37.  This obligation "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008).  Ultimately, the ALJ's duty is to "investigate and develop the facts and develop the arguments both for and against the granting of benefits." Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 305 (2d Cir. 2011).

19.     But the ALJ's duty is not without limits.  See Eugene F. v. Comm'r of Soc. Sec., 1:20-cv-04356-GRJ, 2022 WL 355918, at *8 (S.D.N.Y. Feb. 7, 2022) (noting that "the ALJ's obligation to assemble the claimant's medical records, although robust, is not unlimited." (citations and quotations omitted)).  First, no further development of the record is necessary "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history." Rosa v. Callahan, 168 F.3d at 79 n.5; see also Johnson v. Comm'r of Soc. Sec., 16-CV-831T, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018) ("Where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records.").  In

9

such a situation, the overriding inquiry is whether the evidentiary record before the ALJ was "robust enough to enable a meaningful assessment of the particular conditions on which the petitioner claim[ed] disability." Sanchez v. Colvin, No. 13-CV-6303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015); accord Walsh v. Colvin, No. 3:13CV00687 (JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (finding that the ALJ's duty to develop the records is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled.").

20. Second, the ALJ must make only *reasonable* efforts to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application is filed. See 42 U.S.C. § 423 (d)(5)(B); 20 C.F.R. § 404.1512 (b)(1) ("We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports."). "Reasonable effort" under the regulation means making an initial request and one follow-up request. See 20 C.F.R. § 404.1512 (b)(1)(i). Issuance of subpoenas is discretionary, as is the decision whether to enforce a subpoena once issued. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Johnson v. Comm'r of Soc. Sec., 19-cv-1576 (KAM), 2021 WL 308284, at *5 (E.D.N.Y. Jan. 29, 2021) ("An ALJ has discretionary power in issuing and enforcing subpoenas."); 20 C.F.R. § 404.950 (d)(1).

21. Here, there is no indication that there were obvious gaps in the evidentiary record or that the ALJ lacked a complete medical history. Along with Dr. Khadim, the ALJ relied on two other medical opinions that contained function-by-function assessments (Drs. Nohejl and Brauer), see R. at 24-25, as well as the record treatment notes and

10

Plaintiff's testimony.  The ALJ adequately explained her assessment of Dr. Khadim's findings, and while Plaintiff may disagree with the ALJ's weighing of the evidence, she points to no evidence indicating greater limitations than those reflected in the RFC.  Consequently, this Court finds no error.

22. Plaintiff's second argument is that the ALJ failed to properly consider her testimony concerning the need to elevate her legs.  Plaintiff testified that she has to "constantly keep [her] legs elevated" and that she elevates her leg "at least four times out of the day" for "like a half-an-hour each time."  (R. at 43, 47.)  She further testified that elevating her leg "helps a little bit," and that she *thought* that Dr. Khadim told her to try to elevate her leg.  (R. at 47 (emphasis added).)  In considering this testimony, the ALJ found that "[t]he claimant no doubt elevates her leg on occasion, but there is nothing in the medical record to support her testimony that she elevates her leg four times a day for 30 minutes on each occasion."  (R. at 23.)

23. Relying on a single treatment note memorializing Plaintiff's self-report that she "tries keeping leg elevated when possible," (R. at 331), Plaintiff maintains that the ALJ's finding that "nothing" in the record supports Plaintiff's testimony is not supported by substantial evidence.  There is, however, a disconnect between Plaintiff's argument and the ALJ's finding.  The ALJ first found that "[t]he claimant no doubt elevates her leg on occasion," which is consistent with the treatment note reflecting that Plaintiff "*tries* keeping her leg elevated *when possible*."  (R. at 23, 331 (emphasis added).)  But this treatment note does not undermine the ALJ's second finding, which was that nothing in the record supported Plaintiff's testimony that she elevated (or needed to elevate) her leg four times a day for 30 minutes at a time.  Nowhere in the record is it recorded that Plaintiff adhered

11

to such a regimen or was instructed to, and Plaintiff points to no such evidence.  Put simply, Plaintiff's one-time report that she *tried* to elevate her leg *when possible* does not contradict the ALJ's finding that the record contained no evidence supporting Plaintiff's alleged four-times-per-day habit or that any medical provider ever instructed her to elevate her leg so frequently.  This Court therefore finds no error.

24. Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27.  Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      March 1, 2022
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge